1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ROBERT BLAIR AND SPRINGSHOT, INC.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>INFORM SOFTWARE CORPORATION,<br><br>                    Defendant. | Case No. 22-cv-06000-LB<br><br>**ORDER DENYING MOTION**<br>Re: ECF No. 7 |

## INTRODUCTION

Plaintiff Robert Blair is a California-based sales executive who worked for defendant INFORM Software from 2014 through August 2022 and then left to work for plaintiff Springshot in September 2022. Both companies sell aviation software. In letters in August and September 2022, INFORM invoked non-competition and customer non-solicitation covenants in Mr. Blair's employment agreement. The plaintiffs then sued INFORM for declaratory relief to invalidate the covenants, charging that they violate California's Unfair Competition Law (UCL).

INFORM moved to dismiss on the ground that the employment contract — signed by Mr. Blair in 2014 in Florida, before he moved to California in 2015 — required him to arbitrate any dispute about his employment in Chicago, Illinois. (INFORM is incorporated in Illinois and headquartered in Georgia.) Alternatively, INFORM moved to compel arbitration. The plaintiffs countered that the forum-selection clause is invalid under California Labor Code § 925, which renders unenforceable

any forum-selection clause that requires a California employee to adjudicate California claims in another state, the clause is invalid in any event, and the arbitration agreement is unconscionable. The court denies the motion: the forum-selection clause is unenforceable (and is otherwise unconscionable, primarily because the parties and the dispute have no meaningful connection to the Illinois forum), and other contract provisions — one-way terms that favor INFORM, costs shifted to Mr. Blair, and invalid waivers of unwaivable rights — render the arbitration clause unconscionable.

## STATEMENT

In 2014, Mr. Blair began working for INFORM as its Director of Business Development in North America, with duties that included managing the North American sales of INFORM software to aviation companies. He left INFORM on August 31, 2022, after giving a month's notice. On September 1, 2022, he joined Springshot, also selling software to aviation companies.[1] When he joined INFORM, he lived in Florida. He moved to California in 2015 with INFORM's approval and has lived here since.[2]

The 2014 employment agreement had the following provisions. First, it defined Mr. Blair's job responsibilities and compensation.[3] Second, it had a non-waiver clause providing that a failure by either party to enforce the contract terms is not a waiver of the terms.[4] Third, it had a severability clause providing that if any provision of the agreement were "held invalid, unenforceable, void, or voidable under any applicable law, such provision shall not affect the validity or enforceability of any other provision" of the agreement.[5] Fourth, it had an integration clause providing that any

---

[1] Blair Decl. – ECF No. 16-1 at 2 (¶ 4), 4 (¶¶ 16, 19); Compl. – ECF No. 1 at 9 (¶ 7), 10 (¶¶ 15, 19–20); Emp. Agreement, Ex. A to Compl. – ECF No. 1 at 16 (¶ 3). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. – ECF No. 1 at 9 (¶¶ 8–10).

[3] Emp. Agreement, Ex. A to Compl. – ECF No. 1 at 16–18 (¶¶ 1–4); Emp. Agreement (unredacted), Ex. 1 to Weiler Decl. – ECF No. 6-1 at 5–7 (¶¶ 1–4). The court considers the unredacted agreement under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[4] Emp. Agreement, Ex. A to Compl. – ECF No. 1 at 22 (¶ 16).

[5] *Id.* (¶ 18).

United States District Court
Northern District of California

1   amendment must be written and signed by both parties.[6] Fifth, it had an arbitration clause

2   providing for binding arbitration in Chicago, Illinois, under "the Arbitration Rules of the

3   American Arbitration Association" (AAA) and the substantive laws of the state of Illinois.[7] Sixth,

4   separately from the arbitration clause, it had a choice-of-law clause specifying that "[a]ll

5   obligations" resulting from the agreement "are regulated exclusively by the substantive law of the

6   State of Illinois."[8] Seventh, it had a construction clause providing that the agreement "was the

7   subject of preliminary drafts and review thereof by both parties and their attorneys."[9] Finally, it

8   had provisions about non-solicitation of INFORM's employees and customers and a covenant not

9   to compete with INFORM during the employment and for one year after termination.[10]

10      The parties dispute the circumstances surrounding the signing of the agreement. INFORM

11   contends that Mr. Blair's resume reflected that he was employed at another aviation-related

12   business, emails show his active negotiation of the agreement, there were at least three draft

13   agreements, and Mr. Blair sought and received concessions about health benefits and a higher

14   salary.[11] Mr. Blair characterizes the agreement as a take-it-or-leave-it deal: he had been laid off

15   recently, was unemployed, and told that to INFORM during the interview process. He thus lacked

16   the financial ability to hire a lawyer to advise him about contract terms like the "mandatory"

17   arbitration clause, and INFORM never gave him the relevant AAA rules. He negotiated a modest

18   increase in salary. INFORM tried to hire him as a consultant without health benefits but ultimately

19   hired him as an employee. INFORM drafted the agreement and did not discuss with him any

20   aspects of it other than compensation and benefits.[12]

---

[6] *Id.* at 23 (¶ 20).

[7] *Id.* (¶ 22).

[8] *Id.* (¶ 21).

[9] *Id.* (¶ 23).

[10] *Id.* at 19–22 (¶¶ 7, 9–12).

[11] Weiler Decl. – ECF No. 6-1 at 2 (¶¶ 4–6); Newell Decl. – ECF No. 17-1 at 2 (¶¶ 4–5); Resume, Ex. B to Newell Decl. – ECF No. 17-1 at 7; Email, Ex. C to Newell Decl.– ECF No. 17-1 at 9.

[12] Blair Decl. – ECF No. 16-1 at 2–3 (¶¶ 8–12).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The parties provided the following information about changes to the terms of Mr. Blair's employment. On June 6, 2016, after Mr. Blair moved to California, the parties executed a written addendum to the employment agreement memorializing salary and bonus increases.[13] INFORM then gave Mr. Blair regular increases to his salary (but not his bonus). These were not memorialized in any addendum to the employment agreement. INFORM says that it typically sent generic emails to employees telling them about the increases. Mr. Blair says that in his annual performance reviews, managers would tell him his next year's pay increase. In 2021, that manager was Dirk Stelzer.[14] According to Mr. Blair, INFORM promoted him to "VP Aviation North America" without an accompanying written addendum to the employment agreement.[15] INFORM says that it allowed him to use the title because he said that it would improve sales, but INFORM never changed the title officially, and the title change did not affect his job duties or compensation.[16]

On July 31, 2022, Mr. Blair told INFORM that he would resign effective August 31 and would join Springshot.[17] Springshot sells software with a different purpose: "INFORM claims their GroundStar software is the most comprehensive and scalable software suite for the optimization of aviation process[es] currently on the market[,] [w]hereas Springshot is a collaboration platform for real-time operations that engages mobile workers to perform the right physical tasks at the right time and place." For that reason, Mr. Blair dealt with customers at INFORM (such as Delta Airlines) that were Springshot customers too. Springshot and INFORM share many customers.[18]

During his last month at INFORM, Mr. Blair worked hard to achieve a "seamless transition," including by going to INFORM's principal place of business in Germany to facilitate the transition.[19]

---

[13] *Id.* at 3 (¶ 14); Weiler Decl. – ECF No. 6-1 at 3 (¶¶ 12–13); Emp. Agreement Addendum, Ex. 2 to Weiler Decl. – ECF No. 6-1 at 15–16.

[14] Blair Decl. – ECF No. 16-1 at 3–4 (¶¶ 14–15); Weiler Decl. – ECF No. 6-1 at 3 (¶¶ 14–15); Newell Decl. – ECF No. 17-1 at 2 (¶¶ 6–8).

[15] Blair Decl. – ECF No. 16-1 at 4 (¶ 18).

[16] Newell Decl. – ECF No. 17-1 at 2 (¶ 9).

[17] Compl. – ECF No. 1 at 9 (¶ 13); Blair Decl. – ECF No. 16-1 at 4 (¶¶ 16–17).

[18] Blair Decl. – ECF No. 16-1 at 4 (¶ 19).

[19] *Id.* at 2 (¶ 7), 4 (¶ 16).

1    INFORM sent Mr. Blair letters in August and September 2022 threatening to enforce the non-

2    competition and customer non-solicitation covenants.[20] Mr. Blair has spent his entire career in the

3    aviation industry. "For [him] to have no contact with Springshot's current customers would

4    require start[ing] a new career" at age fifty.[21] This "would impose an enormous hardship" on his

5    family: he is their sole provider. Also, his daughter "has a health condition that requires ongoing

6    medical treatment."[22]

7        The plaintiffs thus filed this declaratory-relief action. In claim one, they seek a declaration that

8    enforcing the non-competition and customer non-solicitation covenants violates the UCL, Cal.

9    Bus. & Prof. Code § 17200, and they ask the court to enjoin INFORM from enforcing the

10   provisions. In claim two, they seek a declaration that the covenants are unenforceable under Cal.

11   Bus. & Prof. Code § 16600 and estop INFORM from preventing Mr. Blair from accepting other

12   employment. The plaintiffs seek their costs and attorney's fees as allowed by law, including under

13   Cal. Civ. Proc. Code § 1021.5.[23]

14       INFORM is a German company. Its U.S. affiliate is an Illinois corporation headquartered in

15   Georgia, with its principal place in Georgia. The plaintiffs are citizens of California.[24] They filed

16   suit in state court and INFORM removed the case to federal court.[25] The parties do not dispute the

17   court's diversity jurisdiction.[26] 28 U.S.C. § 1332. All parties consented to magistrate-judge

18   jurisdiction under 28 U.S.C. § 636.[27] The court held a hearing on December 22, 2022.

19

20

21

22   [20] *Id.* at 4 (¶ 20); Compl. – ECF No. 1 at 10 (¶¶ 16–18); Letters, Exs. B–C to Compl. – ECF No. 1 at
23   25–33.

     [21] Blair Decl. – ECF No. 16-1 at 4 (¶ 20).
24
     [22] *Id.* at 2 (¶ 8), 4–5 (¶ 20).
25
     [23] Compl. – ECF No. 1 at 11–13 (¶¶ 26–35) & Prayer for Relief.
26   [24] *Id.* at 8 (¶¶ 2–4); Blair Decl. – ECF No. 16-1 at 2 (¶ 7).

27   [25] Notice of Removal – ECF No. 1 at 1–5.

     [26] *Id.* at 2–5 (¶¶ 7–17).
28   [27] Consents – ECF Nos. 13, 15.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANALYSIS**

There are two issues here: (1) whether the forum-selection clause is enforceable and (2) whether the arbitration agreement is enforceable. The court does not enforce the forum-selection clause: it is unenforceable under California Labor Code § 925, and it is in any event unconscionable. The arbitration clause has unconscionable terms. The court denies INFORM's motion.

**1.   Forum-Selection Clause**

The parties do not dispute that if Mr. Blair's employment contract was modified after 2017, then the forum-selection clause is unenforceable under California Labor Code § 925. The only argument that INFORM advanced in its motion is that the 2017 changes were not in writing and signed by the CEO, as the contract required.[28] A unilateral modification is binding, even if the underlying contract provides for modification only in writing. *LGCY Power, LLC v. Super. Ct.*, 75 Cal. App. 5th 844, 867–68 (2022); *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-cv-00792-EMC, 2019 WL 5789273, at *7 (N.D. Cal. Nov. 6, 2019). INFORM's authority is distinguishable: they involve implied contracts that contradict a written agreement, not a fully executed express modification. *See, e.g.*, *Haggard v. Kimberly Quality Care, Inc.*, 39 Cal. App. 4th 508, 521–22 (1995). Thus, the forum-selection clause is unenforceable under § 925. (As discussed below, the forum-selection clause also is invalid because it is unconscionable.)

Because the forum-selection clause is invalid, to prevail on its motion to dismiss on the ground of forum non conveniens, INFORM must show that the balance of private and public factors favors dismissal. *In re Facebook, Inc. S'holder Derivative Priv. Litig.*, 367 F. Supp. 3d 1108, 1119 (N.D. Cal. 2019); *see Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013). "Forum non conveniens is an exceptional tool to be employed sparingly." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (cleaned up). "The plaintiff's choice of

---

[28] Mot. – ECF No. 7 at 13–14. To the extent that INFORM says in its reply that the 2017 changes were too insubstantial to qualify as a modification, Reply – ECF No. 17 at 7, a district court need not consider arguments raised for the first time in a reply brief. *Zamani v. Carnes*, 491 F. 3d 990, 997 (9th Cir. 2007).

forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor" adjudication elsewhere. *Id.*

The factors do not favor the Illinois forum. Among other reasons, the Northern District is the plaintiff's chosen forum, no party has meaningful ties to Illinois, and Mr. Blair worked here. INFORM cannot make any credible argument that it is inconvenienced by litigating in California or that the local interests favor Illinois. *DePuy Synthes Sales Inc. v. Stryker Corp.*, No. ED CV 18-1557 FMO (KKx), 2019 WL 1601384, at *5 (C.D. Cal. Feb. 5, 2019), *aff'd sub nom.*, *DePuy Sythes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956 (9th Cir. 2022); *DePuy Sythes Sales*, 28 F.4th at 965–67 (affirming decision to void forum-selection clause under § 925 and deny transfer).

Moreover, even if the forum-selection clause were enforceable, the public-interest factors — "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum"— disfavor enforcement. *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009) (cleaned up).

## 2. Arbitration

Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

This is the arbitration clause in the employment agreement:

> Any controversy, dispute, or claim between the Company and the Employee or claim by either against the other or any agent or affiliate of the other[,] arising out of or having any connection to this Employment Agreement or the Employee's employment or termination of employment[,] shall be determined by binding arbitration in accordance with the Arbitration Rules of the American Arbitration Association. The arbitration proceedings shall be held before a single arbitrator. This arbitration shall be held in Chicago, Illinois and shall apply the substantive laws of the State of Illinois. Any award of such arbitration tribunal shall be final and binding upon the parties to this Employment Agreement and shall not be attacked by either party in any court of law and shall be enforced in any court having jurisdiction. Judgment upon the award rendered by the arbitrator may be

entered in any court having jurisdiction thereof. Each side shall be responsible for
its costs of arbitration.[29]

The parties dispute two issues: whether arbitrability is for the arbitrator and whether the

arbitration clause is enforceable.

### 2.1 Arbitrability and Delegation

Under the FAA, "parties may agree to have an arbitrator decide not only the merits of a

particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have

agreed to arbitrate or whether their agreement covers a particular controversy," "so long as the

parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 139 S. Ct. at

529–30 (cleaned up); *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 654

(2022) ("[I]t is presumed the judge will decide arbitrability, unless there is clear and unmistakable

evidence the parties intended the arbitrator to decide arbitrability."). "[B]efore referring a dispute

to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein*,

139 S. Ct. at 530 (citing 9 U.S.C. § 2). "But if a valid agreement exists, and if the agreement

delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

In its reply brief, INFORM essentially concedes that the court decides arbitrability.[30] In any

event, there is no clear and unmistakable evidence that the parties agreed that the arbitrator would

decide arbitrability.[31] The generic reference to AAA rules is insufficient. *Tompkins v. 23andMe,*

*Inc.*, No. 5:13-cv-05682-LHK, 2014 WL 2903752, at *10 (N.D. Cal. June 25, 2014) (clause's

failure to specify particular AAA rules created multiple ambiguities that contributed to clause's

failure to clearly and unmistakably delegate arbitrability), *aff'd*, 840 F.3d 1016 (9th Cir. 2016).

Also, the employment agreement contemplates judicial review of the validity of the non-

competition and customer non-solicitation covenants, which creates ambiguity about whether the

parties delegated arbitrability.[32] *Nelson*, 77 Cal. App. 5th at 655–57 (holding that the "clear and

---

[29] Emp. Agreement, Ex. A to Compl. – ECF No. 1 at 23 (¶ 22).

[30] Reply – ECF No. 17 at 9 (INFORM "cares not" who determines arbitrability).

[31] Opp'n – ECF No. 16 at 24–25.

[32] Emp. Agreement, Ex. A to Compl. – ECF No. 1 at 22 (¶ 13) (a savings clause provides that if a court
of competent jurisdiction declares invalid the non-competition and non-solicitation covenants in
paragraphs 9 through 12, then the restrictions are severable).

1   unmistakable" test was not met because the agreement's severability clause "expressly

2   contemplated court review of the validity and enforceability" of any provision of the agreement);

3   *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 WL 946112, at \*7 (N.D. Cal.

4   Mar. 14, 2016) (same). The court decides arbitrability.

5   **2.2 Enforceability**

6   The next issue is whether the arbitration clause is unconscionable.

7   A preliminary issue is what law governs that analysis. The employment agreement has an

8   Illinois choice-of-law provision. INFORM "assume[d] . . . that its request to compel arbitration

9   should be decided under California law and not the contractually chosen law of Illinois."[33]

10   INFORM nonetheless cites Illinois and Florida law, especially in support of its substantive-

11   unconscionability analysis.[34] The court applies California law because California has the greatest

12   interest in the employment agreement.

13   When an arbitration clause has a choice-of-law provision, a district court exercising diversity

14   jurisdiction must apply the forum state's choice-of-law rules to determine whether to apply the law

15   in the provision. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th

16   Cir. 2010) ("A federal court sitting in diversity applies the forum state's choice of law rules.");

17   *Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1080 (N.D. Cal. 2015).

18   California courts apply the law chosen by the parties unless (1) "the chosen state has [no]

19   substantial relationship to the parties or their transaction," and "there is [no] other reasonable basis

20   for the parties' choice of law," or (2) "the chosen state's law is contrary to a fundamental policy

21   of" the state with the most significant relationship to the parties and their transaction. *Nedlloyd*

22   *Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 465–66 & n.5 (1992).

23   At the first step, INFORM is incorporated in Illinois. *See, e.g.*, *Hambrecht & Quist Venture*

24   *Partners v. Am. Med. Int'l, Inc.*, 38 Cal. App. 4th 1532, 1546 (1995) ("[A] party's place of

25

26

27   [33] Mot. – ECF No. 7 at 21 n.3.

28   [34] *Id.* at 22–23; Reply – ECF No. 17 at 9–10.

United States District Court
Northern District of California

incorporation . . . meets the alternative 'reasonable basis' test."). But its principal place of business is in Georgia, and neither party has any other connection to the Illinois forum.

At the second step, California has the greatest interest in the employment agreement because Mr. Blair was a California employee. *See, e.g.*, *Arthur J. Gallagher & Co. v. Lang*, No. C 14-0909 CW, 2014 WL 2195062, at *3 (N.D. Cal. May 23, 2014) (analyzing an Illinois choice-of-law provision in an employment agreement involving a California employee). "Applying Illinois law to the parties' contract would contravene California's fundamental public policy against the enforcement of non-competition and non-solicitation agreements." *Id.*; Cal. Bus. & Prof. Code § 16600; *Golden v. Cal. Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1024 (9th Cir. 2018) ("[I]t will be the rare contractual restraint whose effect is so insubstantial that it escapes scrutiny under § 16600."). California law applies here.

Applying California law, the arbitration clause is unconscionable.

The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "Under California law, 'the party opposing arbitration bears the burden of proving any defense, such as unconscionability.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). The court may consider material outside of the pleadings. *Thompson v. Isagenix Int'l LLC*, 849 F. App'x 712, 712 (9th Cir. 2021); *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 & n.1 (9th Cir. 2021) (collecting cases for the proposition that "[t]he summary judgment standard is appropriate" under 9 U.S.C. § 4).

In California, contractual unconscionability has procedural and substantive components. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "[T]he former focus[es] on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Id.* (cleaned up). To establish the unconscionability defense, "the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the

contract is both procedurally and substantively unconscionable." *Poublon*, 846 F.3d at 1260

(citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015)). "Procedural and

substantive unconscionability 'need not be present in the same degree.'" *Id.* (quoting *Sanchez*, 61

Cal. 4th at 910). "Rather, there is a sliding scale: 'the more substantively oppressive the contract

term, the less evidence of procedural unconscionability is required to come to the conclusion that

the term is unenforceable, and vice versa.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910).

### 2.2.1    Procedural Unconscionability

Procedural unconscionability focuses on the circumstances surrounding the negotiation of the

contract. *Gatton v. T–Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007). Specifically,

procedural unconscionability can arise from oppression or surprise. *Armendariz*, 24 Cal. 4th at

114. "Oppression arises from an inequality of bargaining power which results in no real

negotiation and an absence of meaningful choice." *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288

(2008) (cleaned up). "Surprise involves the extent to which the supposedly agreed-upon terms of

the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed

terms." *Id.* (cleaned up); *Correa v. Firestone Complete Auto Care*, No. C 13–03123 CW, 2013

WL 6173651, at *2 (N.D. Cal. Nov. 25, 2013).

Surprise is not present here. The claimed procedural deficiency is "oppression." The plaintiffs

contend that the arbitration clause was a take-it-or-leave-it deal, it thus was mandatory, INFORM

prepared the contract, and INFORM did not specify what AAA rules applied or provide Mr. Blair

with any such rules.[35] INFORM counters that when it hired Mr. Blair, he "was purportedly working

for another company and engaged in robust contract negotiation such that he extracted significant

additional concessions from INFORM, including salary increases and insurance benefits."[36]

The plaintiffs cite one case to support procedural unconscionability — *Trivedi v. Curexo Tech.*

*Corp.*, 189 Cal. App. 4th 387, 393 (2010) — a case invalidating an arbitration clause in a contract,

---

[35] Opp'n – ECF No. 16 at 24–32.

[36] Reply – ECF No. 17 at 9 (citing Newell Decl. – ECF No. 17-1 at 2 (¶ 5)).

even though the plaintiff was a CEO.[37] INFORM cites no cases in its reply brief but relies in its motion on *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016), to support its argument that this was a contract negotiated by roughly equal parties.[38] On this record and briefing, the court finds at least moderate procedural unconscionability.

In *Trivedi*, the California Court of Appeal upheld a trial court's decision that an arbitration clause was procedurally unconscionable, even though the employee was a CEO: "The trial court found the clause to be procedurally unconscionable for three reasons — 'the agreement was prepared by Curexo, it was a mandatory part of the agreement[,] and Trivedi was not given a copy of the AAA Rules.' We agree that each and all of these uncontroverted factors support the court's ruling." *Id.* (cleaned up). Decisions subsequent to *Trivedi* have adjusted the analysis by holding that a failure to provide a copy of AAA rules, standing alone, will not make an arbitration clause procedurally unconscionable, but the combination of that and a failure to "clearly specif[y] a particular set of AAA rules" will. *See, e.g.*, *Lane v. Francis Cap. Mgmt. LLC*, 224 Cal. App. 4th 676, 691–92 (2014); *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 244–46 (2016); *Ali v. JP Morgan Chase Bank*, No. C 13-01184 JSW, 2013 WL 12199968, at *3 (N.D. Cal. Dec. 16, 2013), *rev'd on other grounds*, 647 F. App'x 783 (9th Cir. 2016).

INFORM's argument — that Mr. Blair was sought after and able to negotiate an adjustment to his compensation — does not change the analysis.[39] The plaintiff in *Trivedi* was a CEO. Similarly, in *Abramson v. Juniper Networks, Inc.*, there was procedural unconscionability despite the plaintiff's "substantial renown" (he was a director of corporate communications) and his winning "substantial and unusual concessions during his pre-employment negotiations." 115 Cal. App. 4th 638, 644, 662–63 (2004). This "ability to negotiate other aspects of his employment . . . ha[d] no bearing on the question of whether he had power to negotiate the *arbitration* provision," and like

---

[37] Opp'n – ECF No. 16 at 26–27.

[38] Reply – ECF No. 17 at 9; Mot. – ECF No. 7 at 21.

[39] Mot. – ECF No. 7 at 21; Reply – ECF No. 17 at 9.

1  Mr. Blair, he declared that he was "required to sign [the employment agreement] as a condition of

2  employment." *Id.*

3       Here, there is a moderate degree of procedural unconscionability because INFORM drafted a

4  mandatory arbitration clause that did not specify the applicable AAA rules and did not provide

5  Mr. Blair with any such rules.[40] *Carbajal*, 245 Cal. App. 4th at 247 (moderate degree of

6  procedural unconscionability "based on [the arbitration clause's] adhesive nature, the employment

7  context in which it arose, its failure to identify the governing AAA rules, and [the employer]'s

8  failure to provide [the employee] with a copy of the governing rules or the opportunity to review

9  any rules"). Also, the so-called concessions that Mr. Blair negotiated were a modest salary

10  increase and health benefits.

11       Under the sliding-scale approach, a moderate degree of procedural unconscionability means

12  that the plaintiffs must show a moderate degree of substantive unconscionability. *Id.* at 253.

13       ### 2.2.2   Substantive Unconscionability

14       No matter how great the procedural unconscionability, a contract is enforceable under

15  California law unless it is also substantively unconscionable. *Correa*, 2013 WL 6173651, at *3

16  (citing *Armendariz*, 24 Cal. 4th at 114). Substantive unconscionability focuses on the harshness

17  and one-sidedness of a contract's substantive terms. *Id.* (citing *A & M Produce Co. v. FMC Corp.*,

18  135 Cal. App. 3d 473, 486–87 (1982)).

19       The plaintiffs contend, and INFORM disputes, that the arbitration clause is substantively

20  unconscionable because it has one-sided terms in favor of INFORM, it forces Mr. Blair to bear his

21  costs of arbitration, it waives unwaivable rights (such as his right to appeal any decision), and it

22  requires an Illinois forum that has no meaningful connection to the parties or the dispute.[41] The

23  plaintiffs also contend that the court should not sever the offending terms and instead should hold

24  the entire arbitration clause unenforceable.[42]

25  

26  [40] Blair Decl. – ECF No. 16-1 at 3 (¶¶ 10–12); Emp. Agreement, Ex. A to Compl. – ECF No. 1 at 23 (¶ 22).

27  [41] Mot. – ECF No. 7 at 22–23; Opp'n – ECF No. 16 at 27–31; Reply – ECF No. 17 at 9–11.

28  [42] Opp'n – ECF No. 16 at 31–32.

1   First, the injunctive-relief provision — INFORM can seek injunctive relief without proving

2   damages or irreparable injury — is substantively unconscionable because it is one-sided.[43]

3   INFORM responds that the law in effect at the time the contract was formed (Florida or Illinois)

4   does not require mutuality of remedies.[44] But — even assuming that law applies — INFORM cites

5   only the general proposition that mutuality of remedies is not required and does not provide any

6   analysis of fact patterns where courts have upheld one-sided clauses. There may or may not be one-

7   sided provisions that are disallowed under Illinois or Florida law. Moreover, in California, one-

8   sided injunctive relief that is available only to the employer shows substantive unconscionability.

9   An arbitration agreement can "lack[] mutuality and [be] substantively unconscionable when it

10   authorizes the stronger party to obtain injunctive relief without establishing all of the essential

11   elements for the issuance of an injunction." *Carbajal*, 245 Cal. App. 4th at 249–50. For example,

12   in *Carbajal*, an employment agreement authorized the employer to obtain permanent injunctive

13   relief without posting a bond, even though California statutes authorized only preliminary

14   injunctive relief and required a bond. *Id. Carbajal* and other cases establish that there is

15   substantive unconscionability when injunctive relief is available only to an employer and not to an

16   employee. *Id.*; *Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 634–35 (2015)

17   (affirming trial court's finding that an arbitration clause "was one-sided, objectively unreasonable,

18   and lacked mutuality" when under the employment agreement, only the company could seek

19   judicial relief); *Trivedi*, 189 Cal. App. 4th at 397 (same).

20   Sometimes, a lack of mutuality of remedies in an arbitration clause is permitted. *Armendariz*, 24

21   Cal. 4th at 117. "[A] contract can . . . provide[] the party with superior bargaining strength a type of

22   extra protection for which it has a legitimate commercial need without being unconscionable." *Id.*

23   But "the 'business realities' that create the special need for such an advantage" must be "explained

24   in the contract itself" or "be factually established." *Id.* For example, in *Carmona v. Lincoln*

25   *Millennium Car Wash, Inc.*, the arbitration clause in an employment agreement had a presumption

26

27   [43] Emp. Agreement, Ex. A to Compl. – ECF No. 1 at 22 (¶ 14).

28   [44] Reply – ECF No. 17 at 9.

United States District Court
Northern District of California

that the employer would be irreparably harmed by a breach of the contract's confidentiality clause (thus eliminating the usual requirement for the employer to prove irreparable harm to obtain injunctive relief). 226 Cal. App. 4th 74, 89 (2014). The court held that the presumption was unconscionable because the arbitration clause had no reciprocal presumption for the employee and the contract offered only a conclusory explanation to "justify[] the one-sidedness" (that the employer was "highly dependent" on its confidential information). *Id.* at 87–89.

Here, the contract somewhat explains INFORM's injunctive-relief advantage: "[INFORM] derives substantial good will from sales and repeat sales to customers," the restrictive covenants are "necessary to protect [INFORM] and its businesses," and "the remedy at law for any breach" of the restrictive covenants "would be inadequate."[45] But these explanations are too conclusory to establish a "special need" for INFORM to be exempted from proving actual damages or irreparable injury to obtain injunctive relief. *Carmona*, 226 Cal. App. 4th at 87–89 (explanation that the employer was "highly dependent on [its] [c]onfidential [i]nformation" was insufficient to justify one-sided injunctive relief); *Martin v. Ricoh Americas Corp.*, No. C-08-4853 EMC, 2009 WL 1578716, at *4 (N.D. Cal. June 4, 2009) (rejecting as overbroad the explanation "that the reason for the [injunctive-relief] advantage is because the employer's injury 'cannot be compensated by monetary damages alone'"); *Randazzo Enters. v. Applied Underwriters Captive Risk Assurance Co.*, No. 5:14-CV-02374-EJD, 2014 WL 6997961, at *6 (N.D. Cal. Dec. 11, 2014) (same). And without a sufficient explanation, it is substantively unconscionable for INFORM to be so exempted. *Carbajal*, 245 Cal. App. 4th at 249–50.

Second, cost-sharing provisions like these are substantively unconscionable and unenforceable under California law.

An arbitration agreement "cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110–11 (emphasis removed). Thus, "the employer must bear the arbitration forum costs," such as "arbitrators' fees." *Id.* at 107–13. The Ninth Circuit has held

---

[45] Emp. Agreement, Ex. A to Compl. – ECF No. 1 at 20–22 (¶¶ 10, 12–14).

repeatedly that such provisions are substantively unconscionable and thus unenforceable under California law. *Newton v. Am. Debt Servs., Inc.*, 549 F. App'x 692, 694 (9th Cir. 2013); *Martin v. TeleTech Holdings, Inc.*, 213 Fed. App'x 581, 583 (9th Cir. 2006); *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1178 (9th Cir. 2003); *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003); *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 785 (9th Cir. 2002); *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002) (reasoning that term requiring employee to split arbitrator's fees with employer "alone would render an arbitration agreement unenforceable"). There is no significant difference between the cost-allocation terms of the arbitration provision in this case and those rejected in precedential cases.

INFORM did not offer to pay the arbitration costs. "The Ninth Circuit has indicated that an employer may take an arbitration agreement — originally unconscionable because it requires an employee to bear half the costs of arbitration — and render it non-unconscionable by agreeing to bear the full cost of arbitration." *Hughes v. S.A.W. Ent., Ltd.*, No. 16-cv-03371-LB, 2018 WL 4109100, at *4 (N.D. Cal. Aug. 29, 2018) (citing *Mohamed v Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016)). This term is substantively unconscionable.

Third, the plaintiffs contend that it is substantively unconscionable for the arbitration clause to waive a party's right under the FAA to seek judicial review of an arbitration award.[46] 9 U.S.C. § 10(a) (providing for limited judicial review). Contracting parties cannot waive the FAA's provisions for judicial review of arbitration awards. *In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*, 737 F.3d 1262, 1267 (9th Cir. 2013) ("the grounds for vacatur of an arbitration award" under § 10 of the FAA "are not waivable[] or subject to elimination by contract"). INFORM essentially concedes that this provision is unconscionable by asking for it to be severed.[47]

Fourth, the plaintiffs argue that it is substantively unconscionable for the arbitration clause to waive Mr. Blair's rights (1) under the California Labor Code (based on the Illinois choice-of-law provision) and (2) "to file administrative charges before the [Equal Employment Opportunity

---

[46] Opp'n – ECF No. 16 at 29.

[47] Mot. – ECF No. 7 at 24; Reply – ECF No. 17 at 11.

United States District Court
Northern District of California

1   Commission] or [California Department of Fair Employment and Housing]" (because the arbitration

2   clause applies to all disputes without exception).[48] INFORM did not respond to this argument and,

3   again, suggests severing any unlawful terms.[49] This supports substantive unconscionability.

4       Fifth, despite conceding that California law applies, INFORM cites only Florida and Illinois

5   law to support its argument that requiring arbitration in Illinois (that is, the forum-selection clause)

6   is not unconscionable. But as discussed above, neither party has any meaningful connection to

7   Illinois: Mr. Blair works here, and INFORM's U.S. operations are based in Georgia. The forum

8   must have "a logical connection with at least one of the parties or their transaction." *Verdugo v.*

9   *Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 147 (2015); *Korman v. Princess Cruise Lines, Ltd.*, 32

10  Cal. App. 5th 206, 216 (2019) (the test is whether "there is [a] 'rational basis' for the selected

11  forum"); *Cal-State Bus. Prods. & Servs. v. Ricoh*, 12 Cal. App. 4th 1666, 1679 (1993) (the test is

12  whether "the choice of forum ha[s] some rational basis in light of the facts underlying the

13  transaction"). It does not, and the arbitration location is unenforceable. *Lucas v. Gund, Inc.*, 450 F.

14  Supp. 2d 1125, 1134 (C.D. Cal. 2006) (arbitration agreement's New Jersey location was

15  unenforceable, even though the defendant was a New Jersey corporation, because it would impose

16  a financial burden on the plaintiff and it conflicted with FAA § 4, which requires that arbitration

17  take place in the district where a petition for arbitration is filed). In any event, the court cannot

18  order arbitration outside the district where a motion to compel is filed. *See, e.g.*, *Beauperthuy v. 24*

19  *Hour Fitness USA, Inc.*, No. 06-0715-SC, 2012 WL 3757486, at *5 (N.D. Cal. July 5, 2012).

20      In sum, the arbitration clause has moderate procedural unconscionability and moderate

21  substantive unconscionability. That combination makes the clause unenforceable, at least without

22  any severing. *Carbajal*, 245 Cal. App. 4th at 253.

23      The question then is whether to sever the problematic terms from the contract and enforce the

24  arbitration clause. The decision to sever is in the trial court's discretion. *Armendariz*, 24 Cal. 4th at

25  121–22; *Newton*, 549 F. App'x at 695. The "overarching inquiry is whether the interests of

26

27  _____
    [48] Opp'n – ECF No. 16 at 30.

28  [49] Reply – ECF No. 17 at 11.

justice . . . would be furthered by severance." *Armendariz*, 24 Cal. 4th at 124 (cleaned up). The *Armendariz* court found that a central feature, also present here, "weigh[ed] against severance" — that the arbitration agreement contained "more than one" unconscionable term. *Id.* (There were two such terms in *Armendariz*: a term limiting arbitration to wrongful-termination claims by the employee and a term limiting the damages recoverable by the employee. *Id.* at 120–21, 124.) "[M]ultiple defects," the court wrote, "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id.* at 124. The court concluded, "given the multiple unlawful provisions, the trial court did not abuse its discretion" in deciding not to sever and to instead deem the whole arbitration clause unenforceable. *Id.* at 124–25.

The Ninth Circuit's decision in *Newton* is similar: it upheld the district court's decision not to sever and enforce the remainder of an arbitration agreement. 549 F. App'x at 695.

> The district court did not implausibly or illogically decline to sever the unconscionable parts of this arbitration agreement, despite Congress's preference for arbitration. The arbitration agreement included four unconscionable provisions. To have severed all of them would have left a mere agreement to arbitrate, therefore requiring extensive reformation of the arbitration agreement.

*Id.* (cleaned up). Here, too, redacting all those terms would leave little more than the "mere agreement to arbitrate," thus "requiring extensive reformation of the arbitration agreement" by the parties. *See Jackson v. S.A.W. Ent. Ltd.*, 629 F. Supp. 2d 1018, 1029–32 (N.D. Cal. 2009) (declining to sever where arbitration clause had "more than one" unconscionable term).

Arbitration, however valuable and strongly preferred, is meant only to provide an alternative forum to litigation. The court declines to sever the problematic terms and instead holds the entire arbitration agreement unenforceable. Thus, the court denies the motion to compel arbitration.

## CONCLUSION

The court denies the motion to dismiss or, alternatively, to arbitrate. This resolves ECF No. 7.

**IT IS SO ORDERED.**

Dated: January 8, 2023

LAUREL BEELER
United States Magistrate Judge